1

2

3                          UNITED STATES DISTRICT COURT

4                         NORTHERN DISTRICT OF CALIFORNIA

5

6    UNITED STATES OF AMERICA,                Case No.  22-cr-00141-JSC-1

7                    Plaintiff,

                                              **ORDER RE: MOTION TO SUPPRESS**
8            v.
                                              Re: Dkt. No. 43
9    JORGE AYALA,

10                   Defendant.

11

12           Federal agents obtained a warrant to search 21360 Santa Clara Avenue, Monte Rio,

13   California, further described as "a red and green structure."  When they executed the warrant, they

14   learned that the suspect, defendant Jorge Ayala, did not live in the red and green structure, and

15   instead resided at a completely separate yellow residence that shares the same address as the red

16   and green structure.  Without obtaining a warrant, they searched Mr. Ayala's rooms in the attic of

17   the yellow residence and discovered inculpatory evidence. The government subsequently charged

18   Mr. Ayala with possession of child pornography.  Pending before the Court is Mr. Ayala's motion

19   to suppress all evidence resulting from the search of his home.  (Dkt. No. 43.)  Having carefully

20   considered the parties' briefs, evidence, and the relevant legal authority, and having had the

21   benefit of oral argument on December 14, 2022, the Court concludes the search of Mr. Ayala's

22   residence was not within the scope of the warrant, and no exception to the warrant requirement

23   applies.

24                                   **BACKGROUND**

25           In connection with an investigation of Mr. Ayala for possession of child pornography, a

26   magistrate judge issued a warrant titled "In the Matter of the Search of Application by the United

27   States for a Search Warrant for One Physical Location and Electronic Devices for Investigation of

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   18 U.S.C. § 2252." (Dkt. No. 45-1 at 2.[1])  The warrant authorized the search of the person or

2   property set forth in Attachment A.  (*Id*.)  Attachment A-1 stated: "21360 Santa Clara Avenue

3   Monte Rio, California ('TARGET LOCATION') is further described as a red and green structure

4   with the numbers '21360' written on a sign above the access gate."[2]  (*Id*. at 4.)  Attachment A-2

5   stated: "Jorge Ayala ('TARGET PERSON') is further described as Jorge Alejandro Ayala, a male

6   of age 27, date of birth [redacted]."  (*Id*. at 5.)  The warrant authorized the seizure of the evidence

7   set forth in Attachment B.  (*Id*. at 2.)  Attachment B identified "records and materials" relevant to

8   "possession and distribution of child pornography" "found at the TARGET LOCATION or on the

9   person of Jorge Ayala ('TARGET PERSON')."  (*Id*. at 6.)

10          On June 29, 2021, at approximately 6:00 a.m., 17 agents and law enforcement officers

11   arrived at 21360 Santa Clara Avenue to serve the warrant. (Dkt. No. 51-1, SA Abrahams Decl. at ¶

12   23.)   Agents knocked on the red gate with the numbers 21360 affixed to the top.  (*Id*. at ¶ 26.)  A

13   man, later identified as Daniel Lenz, answered the gate.  (*Id*.)  Mr. Lentz advised the officers he

14   was not Jorge Ayala, he was the only resident of the red and green house, and Mr. Ayala lived in

15   the attic unit of the large yellow house down at the bottom of the hill.   (*Id*. at ¶ 28; Dkt. No. 44,

16   Anderson Decl. at ¶ 14.)

17          Law enforcement personnel then entered gate.  (Dkt. No. 51-1, SA Abrahams Decl. at ¶

18   26.)  Immediately past the gate to the right, there was a door to the red and green house that abuts

19   Santa Clara Avenue.  At least two agents entered this house to perform a protective sweep.  (*Id.*)

20   Other law enforcement officers proceeded down the stairs and took a path to the left of the stairs

21   which led to a short wooden bridge and "the door of a separate structure" which appeared to be

22   built on top of the roof of the yellow house that was accessible at the bottom of the staircase.  (*Id*.)

23

24   _____

25   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
ECF-generated page numbers at the top of the documents.

26   [2] The address in Attachment A-1 to the warrant is redacted because this is how it was produced by
the government.  (Dkt. No. 45, Bischof Decl. at ¶ 2.)  The address is not redacted in the version of

27   Attachment A-1 attached to the application in support of the warrant.  (*Compare* Dkt. No. 45-2 at
16 (unredacted A-1) *with* Dkt. No. 45-1 at 4 (redacted A-1).)  Further, both parties use the full
address throughout their briefs.  Because there is no dispute that the two Attachment A-1s are

28   identical, when discussing Attachment A-1 to the warrant, the Court includes the full address.

United States District Court
Northern District of California

1   It was later determined that the structure on top of the yellow house was referred to as "the

2   treehouse." (*Id*.)  Law enforcement officers knocked on the door of the treehouse and Mr. Ayala

3   answered. (*Id*. at ¶ 29.)  He was the only occupant inside the treehouse. (*Id*.)

4        Law enforcement officers proceeded to search the treehouse—Mr. Ayala's residence in the

5   yellow house—without obtaining a new warrant. Among other items, law enforcement officers

6   seized two cell phones and a USB drive from inside Mr. Ayala's residence. (*Id*. at ¶¶ 30, 35-37;

7   Dkt. No. 45-6 (evidence log).)  The two cell phones, a Blu G90 Pro cell phone and black Samsung

8   cell phone, were found to contain "child sexual abuse material." (Dkt. No. 51-1, SA Abrahams

9   Decl. at ¶¶ 35-36.)  Law enforcement also took statements from Mr. Ayala at the scene and he

10   made inculpatory statements. (*Id.* ¶ 34.)   On December 20, 2021, agents again interviewed Mr.

11   Ayala, and again Mr. Ayala made inculpatory statements. (*Id.*)

### DISCUSSION

13        Mr. Ayala contends the search of his attic residence was outside the search warrant's scope

14   and therefore performed in violation of his Fourth Amendment rights.  As a result, he moves to

15   suppress all evidence obtained during the search, as well as his statements made at the scene of the

16   search and statements made six months later.  Mr. Ayala bears the burden of demonstrating a

17   violation of his Fourth Amendment rights. *See United States v. Caymen*, 404 F.3d 1196, 1199 (9th

18   Cir. 2005).

19       **A.  The Search Warrant's Scope**

20        If the "scope of [a] search exceeds that permitted by the terms of a validly issued warrant

21   ... [the search and any] subsequent seizure [are] unconstitutional." *Horton v. California*, 496 U.S.

22   128, 140 (1990). "Whether a search exceeds the scope of a search warrant is an issue [courts]

23   determine through an objective assessment of the circumstances surrounding the issuance of the

24   warrant, the contents of the search warrant, and the circumstances of the search." *United States v.*

25   *Hitchcock*, 286 F.3d 1064, 1071 (9th Cir. 2002), *amended on other grounds by United States v.*

26   *Hitchcock*, 298 F.3d 1021 (9th Cir. 2002).

27        The circumstances surrounding the search warrant's issuance, the warrant's contents, and

28   the circumstances of its execution, all demonstrate that the search exceeded the warrant's scope.

1    First, the agent applied for a warrant to search a single structure—the property described in

2    "Attachment A" to the application; namely, 21360 Santa Clara Avenue, described as *a* red and

3    green structure.  (Dkt. No. 45-1 at 4.)   The affidavit submitted in support of the warrant

4    application identified 21360 Santa Clara as having seven bedrooms.  (Dkt. No. 45-2 at ¶ 19.)  The

5    application's description of the property as a red and green structure, coupled with the affiant's

6    declaration that it has seven bedrooms, objectively supports only one inference: the agent was

7    applying for a warrant to search a red and green structure located at 21360 Santa Clara.  Second,

8    the warrant's contents confirm this limited scope. It particularly described the area permitted to be

9    searched as:

10
**ATTACHMENT A-1**

11
21360 Santa Clara Avenue, Monte Rio, California ("TARGET LOCATION") is further

12
described as a red and green structure with the numbers "21360" written on a sign above

13
the access gate. We will not search areas determined through observation and interview

to be under the exclusive control of persons who are not the TARGET PERSON, Jorge

14
Ayala.

15    (Dkt. No. 45-2 at 16.[3])  Finally, the warrant's execution establishes that the warrant's scope was

16    exceeded.  Mr. Ayala's searched residence was not in the red and green structure, but rather in a

17    totally separate yellow building down the hill from the red and green structure.

18         As the warrant did not authorize a search of the separate yellow building, the search of Mr.

19    Ayala's residence violated the Fourth Amendment. *See Horton*, 496 U.S. at 140; s*ee also United*

20    *States v. Sedaghaty*, 728 F.3d 885, 913 (9th Cir. 2013) (holding that when a warrant is "expressly

21    limited in scope" a seizure beyond the scope of the warrant is not authorized and requires a new

22    warrant); *Ramirez v. Butte-Silver Bow Cnty*., 298 F.3d 1022, 1027 (9th Cir. 2002) ("the warrant

23    must contain all authorizations and limitations in writing."), *aff'd sub nom. Groh v. Ramirez*, 540

24    U.S. 551 (2004).

25         The government argues that because the warrant states agents "will not search areas

26    determined through observation and interview to be under the exclusive control of persons who

27

28
_____
[3] This screenshot is of Attachment A-1 to the application for the reasons explained in footnote 2.

United States District Court
Northern District of California

1   are not the TARGET PERSON, Jorge Ayala," (Dkt. No. 45-1 at 4), and the agents searched only

2   Mr. Ayala's residence, the search was not beyond the warrant's scope.  The warrant's description

3   of the property to be searched, however, cannot reasonably be read to permit a search of *any*

4   structure found at 21360 Santa Clara, provided it is not within the exclusive control of someone

5   other than Mr. Ayala; such an interpretation wholly ignores the particular description of the place

6   to be searched as a "red and green structure."  The magistrate judge limited the search of the red

7   and green structure to prohibit the search of areas, such as bedrooms, that were in the exclusive

8   controls of persons other than Mr. Ayala. This further limitation was required because the warrant

9   application advised the magistrate judge the red and green structure had seven bedrooms and

10   tenants other than Mr. Ayala.  (Dkt. No. 45-2 at 6, ¶ 19.)

11          The cases the government relies upon are all inapposite.  None remotely suggests that

12   when the government obtains a warrant to search a *particular* residence, the warrant's scope

13   extends to any additional undisclosed residences that share the same mailing address or IP address.

14   *See, e.g., United States v. Vosburgh*, 602 F.3d 512, 526 (3d Cir. 2010) (holding evidence that an IP

15   address assigned to a Comcast account registered to a specific apartment could give rise to

16   probable cause for a search of that apartment); *United States v. Renigar*, 613 F.3d 990, 992 (10th

17   Cir. 2010) (holding that the warrant was adequately supported by probable cause when, among

18   other things, the affidavit in support matched the IP address used to download the child

19   pornography with a residential address that included the defendant's apartment number); *United*

20   *States v. Hay*, 231 F.3d 630, 634 (9th Cir. 2000) (holding that a warrant sufficiently established

21   probable cause to search a specific computer for evidence of child pornography where it was

22   supported by "information obtained from the University's records indicating that the computer

23   located in [the defendant's] apartment is sometimes configured to use the specific Internet address

24   to which Evans transmitted, and from [the defendant] himself that he is the exclusive user of the

25   computer in his apartment."); *United States v. Whitney*, 633 F.2d 902, 908 (9th Cir. 1980) (holding

26   that there was probable cause to search the entire residence although it had been divided into two

27   units because the defendant "had full control of the house.").

28          The government next argues that a "warrant is still deemed valid even after the place to be

United States District Court
Northern District of California

United States District Court
Northern District of California

1    searched is later determined to be subdivided, so long as the officers acted objectively reasonable

2    in executing the warrant." (Dkt. No. 51 at 10.)  At oral argument, the government relied heavily on

3    *United States v. Parmer*, 18-CR-00267-RS, Dkt. No. 99 (N.D. Cal. Oct. 19, 2019), to support this

4    assertion.  *Parmer* addressed whether a warrant was overbroad by authorizing a search of an entire

5    two-bedroom apartment when a separate bedroom in the apartment was under the exclusive

6    control of a person other than the defendant.  In particular, the defendant argued that once the

7    agents learned that the two bedrooms were two separate residences they should have stopped the

8    search and obtained a new warrant that excluded the areas that were under the exclusive control of

9    the other apartment resident.  *Id.* at 7.  The district court acknowledged that once officers "become

10   aware that the warrant describes multiple residences, the officers must confine their search to the

11   resident of the suspect."  *Id.* (quoting *Mena v. City of Simi Valley*, 226 F.3d 1031, 1038 (9th Cir.

12   2000)) (cleaned up).  The court then concluded that while the issue was close, a reasonable officer

13   would not have concluded that there truly were two separate residences.  *Id.* at 8.  *Parmer*, and the

14   other similar cases cited by the government, do not support the legality of the search here.  The

15   agents did not enter the green and red structure and realize that it contained multiple residences;

16   indeed, they advised the magistrate judge that it had tenants and separate residences.  Instead, the

17   agents realized the residence for which they had a warrant—the green and red structure—was not

18   where Mr. Ayala lived.  No case cited by the government, or of which this Court is aware, holds

19   that under these circumstances the government can enter a physically separate residence for which

20   it does not have a warrant.

21          The government violated the Fourth Amendment when the agents searched Mr. Ayala's

22   residence without a warrant authorizing the search.  *Bailey v. Newland*, 263 F.3d 1022, 1029 (9th

23   Cir. 2001).

24          **B.  No Exception to the Exclusionary Rule Applies**

25          The exclusionary rule bars the prosecution from using evidence at trial that has been

26   obtained through a violation of the Fourth Amendment.  *See Wong Sun v. United States*, 371 U.S.

27   471, 484–85 (1963).  "The exclusionary rule applies both to direct products of an illegal search—

28   i.e., the physical evidence found during the search itself—and to indirect products of the illegal

United States District Court
Northern District of California

1    search—i.e., statements or physical evidence subsequently obtained in part as a result of the

2    search—if they bear a sufficiently close relationship to the underlying illegality." *United States v.*

3    *Shetler*, 665 F.3d 1150, 1157 (9th Cir. 2011) (cleaned up). "Evidence derivative of a Fourth

4    Amendment violation—the so-called fruit of the poisonous tree, is ordinarily tainted by the prior

5    illegality and thus inadmissible, subject to a few recognized exceptions." *United States v. Gorman*,

6    859 F.3d 706, 716 (9th Cir.) (cleaned up), *order corrected*, 870 F.3d 963 (9th Cir. 2017). "The

7    government bears the burden of demonstrating that "that evidence is not 'fruit of the poisonous

8    tree.'" *United States v. Patzer*, 277 F.3d 1080, 1086 (9th Cir. 2002) (internal citation omitted).

9    ### 1. The Inevitable Discovery Doctrine

10    The government contends that even if the search violated the Fourth Amendment, the

11    inevitable discovery doctrine precludes exclusion of the evidence. Under the doctrine "if, by

12    following routine procedures, the police would inevitably have uncovered the evidence, then the

13    evidence will not be suppressed despite any constitutional violation." *United States v. Young*, 573

14    F.3d 711, 721 (9th Cir. 2009) (cleaned up). The government argues agents would have ultimately

15    discovered the child pornography on Mr. Ayala's phones "by virtue of a subsequent warrant."

16    (Dkt. No. 51 at 13.)

17    The inevitable discovery doctrine does not apply, when, as here, the agents had probable

18    cause, but failed to obtain a warrant. *See United States v. Mejia*, 69 F.3d 309, 320 (9th Cir. 1995)

19    ("This court has never applied the inevitable discovery exception so as to excuse the failure to

20    obtain a search warrant where the police had probable cause but simply did not attempt to obtain a

21    warrant…to excuse the failure to obtain a warrant merely because the officers had probable cause

22    and could have obtained a warrant would completely obviate the warrant requirement.") (cleaned

23    up). "To apply the inevitable discovery doctrine whenever the police could have obtained a

24    warrant but chose not to would in effect eliminate the warrant requirement." *Id*.

25    ### 2. The Good Faith Exception

26    Next, the government argues that if the Court rules the warrant is invalid, the good-faith

27    exception applies. *See United States v. Leon*, 468 U.S. 897, 919 (1984) (holding that the

28    exclusionary rule does not apply to "evidence obtained in objectively reasonable reliance on a

1    subsequently invalidated search warrant" because the deterrent benefits of suppression do not

2    "justify the substantial costs of exclusion" under such circumstances). *Id*. at 922.  The Court has

3    not ruled that the warrant is invalid; instead, the Court holds the search was not within the scope of

4    the valid warrant.  The good faith exception thus does not apply.  *See United States v. Hitchcock*,

5    286 F.3d 1064, 1071 (9th Cir. 2002) (holding the good-faith exception does not apply where

6    "there is no dispute about the search warrant's validity but only about whether the agents executed

7    the warrant before it was effective."); *see also United States v. Robinson*, No. CR 12-01101

8    MMM, 2013 WL 12073461, at *5 (C.D. Cal. June 10, 2013) (holding that the "'good faith'

9    exception is not relevant in deciding this motion, since the validity of the warrant is not in dispute"

10   and collecting cases), *aff'd*, 623 F. App'x 855 (9th Cir. 2015)

11                      **3.  Mr. Ayala's Statements**

12           Next, the government argues that at least Mr. Ayala's statements to law enforcement at the

13   time of the search and six months later should not be excluded.  To determine the statements'

14   admissibility, the court first "asks whether the statements were the product of the illegal searches;

15   if they were, [the court] then ask[s] whether they were nevertheless so attenuated from the

16   searches that suppression was not warranted." *United States v. Shetler*, 665 F.3d 1150, 1157 (9th

17   Cir. 2011).  The government bears the burden of showing that the statements should not be

18   excluded. *Id.* The government has not yet met its burden.

19           The government first argues that because it had a search warrant for Mr. Ayala's person,

20   his statements are not fruit of the poisonous tree.  The government's position is defeated by

21   *Shetler*.  In that case, the police conducted an illegal search of the defendant's home while the

22   defendant was detained outside. *Id*. at 1154.  The police then Mirandized the defendant and he

23   confessed to producing methamphetamine. *Id*.  The police questioned him multiple times over the

24   next few days, each time following a reading of his Miranda rights, and each time, the defendant

25   made further incriminating statements. *Id*.  The government argued that because the police had

26   probable cause to arrest the defendant, they could question him regarding his use or manufacture

27   of methamphetamine and thus his statements could not be the result of the illegal search. *Id*. at

28   1157. The Ninth Circuit disagreed. The court reasoned that it was likely that the police had

United States District Court
Northern District of California

8

1     questioned the defendant about the illegally obtained evidence, and in the absence of evidence that

2     they did not, the court would assume that they had. *Id.* at 1158. The court reasoned further that

3     when questioned about the illegally-obtained evidence, "the answers the suspect gives to officials

4     questioning him may be influenced by his knowledge that the officials had already seized certain

5     evidence." *Id.* at 1158. Thus, the defendant's statements had to be deemed to be the result of the

6     illegal search. *Id.* at 1159. Similarly, here, the government has not offered evidence that agents

7     did not question Mr. Ayala about the evidence obtained from the illegal search; thus, the

8     presumption is that agents did question him about that evidence at the time of his statements and

9     that his answers may have been influenced by his knowledge that they had discovered

10    incriminating evidence.

11          The government has likewise not met its burden of demonstrating that Mr. Ayala's

12    statements were sufficiently attenuated from the government's illegal conduct so as not to warrant

13    suppression. The "attenuated basis" exception provides "[e]vidence is admissible when the

14    connection between unconstitutional police conduct and the evidence is remote or has been

15    interrupted by some intervening circumstance, so that the interest protected by the constitutional

16    guarantee that has been violated would not be served by suppression of the evidence obtained."

17    *Utah v. Strieff*, 579 U.S. 232, 238 (2016) (cleaned up). "The attenuation doctrine evaluates the

18    causal link between the government's unlawful act and the discovery of evidence, which often has

19    nothing to do with a defendant's actions." *Id.* Courts examine three factors when determining if

20    the attenuation doctrine applies: (1) "the temporal proximity between the unconstitutional conduct

21    and the discovery of evidence"; (2) "the presence of intervening circumstances"; and 3) "the

22    purpose and flagrancy of the official misconduct." *Id.* at 239.

23          As for temporal proximity, this factor does not weigh in the government's favor as to the

24    statements Mr. Ayala made at the scene or those he made six months later. "The relevant question

25    for attenuation purposes is whether th[e] passage of time would have in any way dissipated

26    [defendant's] perception that the searches had produced evidence such that his remaining silent

27    would be useless, or decreased the extent to which the government's confronting [defendant] with

28    the illegally seized evidence induced his statements." *Shetler*, 665 F.3d at 1159; *see also United*

United States District Court
Northern District of California

1    *States v. Bocharnikov*, 966 F.3d 1000, 1004 (9th Cir. 2020) (observing that "one of the first things

2    that [the agent] said to [the defendant] was that he was there to 'ask some follow-up questions'"

3    and "referring back to the initial illegality by using the 'follow-up' phrasing made the second

4    encounter a de facto extension of the first incident, the passage of time notwithstanding.").  "To

5    draw any conclusions from the timing of the defendant's confessions, we must consider the

6    temporal proximity factor in conjunction with the presence of intervening circumstances." *Shetler*,

7    665 F.3d at 1159 (cleaned up); *see also Bocharnikov*, 966 F.3d at 1005 (holding that "[t]he mere

8    fact that time [eight months] has passed is not the deciding factor in any case. We must consider

9    all of the circumstances, including the fact that there were no other 'intervening events' besides

10   the passage of time.").

11         But the government has not shown that any intervening circumstances broke the causal

12   chain between the search and the statements. Although Mr. Ayala received a *Miranda* warning on

13   both occasions, "such warnings are insufficient to 'purge the taint of a temporally proximate prior

14   illegal' act." *Shetler*, 665 F.3d at 1159 (internal citation omitted).   "Any incentive to avoid Fourth

15   Amendment violations would be eviscerated by making the warnings, in effect, a cure-all, and the

16   constitutional guarantee against unlawful searches and seizures could be said to be reduced to a

17   form of words." *Brown v. Illinois*, 422 U.S. 590, 602–03 (1975) (cleaned up).

18         Finally, the government has not shown that the purpose and flagrancy of the illegal search

19   weighs against suppression of Mr. Ayala's statements, at least enough to support not excluding

20   evidence.  The search plainly exceeded the scope of the valid warrant and the government has not

21   argued that exigent circumstances required them to do so.  The purpose of the unlawful search was

22   to find evidence to use against Mr. Ayala, and the evidence obtained is the same evidence that is

23   arguably causally connected to Mr. Ayala's statements.  "Because this unbroken causal chain links

24   the initial illegality and defendant's subsequent statements, the statements are not sufficiently an

25   act of free will to purge the primary taint from the [agent's] unlawful actions." *Shetler*, 665 F.3d at

26   1160 (cleaned up).

27         Accordingly, the government has not met its burden of demonstrating Mr. Ayala's

28   statements were not the product of the illegal search under the attenuation exception.  To the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    extent the government likewise invokes the inevitable discovery doctrine regarding Mr. Ayala's

2    post-search statements, that argument fails for the same reasons as discussed above.

3                              **4. Flagrancy Exception**

4          Finally, the government argues the exclusionary rule is inappropriate because "agents did

5    not flagrantly violate the Fourth Amendment by conducting a search of Mr. Ayala's bedroom."

6    (Dkt. No. 51 at 19.)  The Court disagrees for the reasons the attenuation doctrine does not apply.

7    Moreover, "lack of flagrancy is not a freestanding basis for avoiding the application of the

8    exclusionary rule—at least not where, as here, it falls short of establishing that the officer had an

9    objectively reasonable good-faith belief in the lawfulness of his conduct."  *United States v.*

10   *Ngumezi*, 980 F.3d 1285, 1291 (9th Cir. 2020) (cleaned up).

11                                           ***

12         Any of Mr. Ayala's statements made at the search scene and six months later that were

13   causally related to the unconstitutional search must be excluded.  The record is unclear, however,

14   as to the content of his statements, their timing, and the questions posed.  If the government

15   believes in good faith that any of Mr. Ayala's challenged statements were not the fruit of the

16   illegal search consistent with the law as explained in this Order, it may file a brief, no later than

17   Friday, January 6, 2023, and not to exceed 10-pages in length, along with any supporting

18   evidence.  Mr. Ayala may respond with a brief (not to exceed 10-pages) and his own evidence, if

19   any, on or before January 27, 2023.  The Court will advise the parties if further argument is

20   required.

21                                     **CONCLUSION**

22         "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent

23   exigent circumstances, that threshold may not reasonably be crossed without a warrant."  *Payton*

24   *v. New York*, 445 U.S. 573, 590 (1980).  No reasonable law enforcement officer could have

25   believed a warrant for a search of the red and green residence at 21360 Santa Clara extended to

26   any additional and separate residences with the same address.  As there was no warrant for the

27   search of Mr. Ayala's residence, the evidence obtained from the search must be suppressed.  The

28   Court will address the admissibility of Mr. Ayala's statements following the additional briefing

1    discussed above.

2         Mr. Ayala's motion to seal (Dkt. No. 59-1) is DENIED because it fails to "establish[] that

3    [the] document[s are] sealable because, for example, the safety of persons or a legitimate law

4    enforcement objective would be compromised by the public disclosure of the contents of the

5    document[s]." Crim. L.R. 56-1(b).  Because the Court has not relied on the material submitted

6    with the motion to seal, any renewed motion to seal this material would be unnecessary.  The

7    material attached to the motion, shall not, however, be publicly filed.

8         **IT IS SO ORDERED.**

9    Dated: December 19, 2022

10

11                                                   _Jacqueline Scott Corley_

12                                                   JACQUELINE SCOTT CORLEY
                                                     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12